NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0698
    Facsimile: (213) 894-6269
    E-mail:   jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

04/28/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

         v.

EDGAR SARGSYAN,

       Defendant.

No. CR   2:20-cr-00190-RGK

PLEA AGREEMENT FOR DEFENDANT
EDGAR SARGSYAN

    1.   This constitutes the plea agreement between EDGAR SARGSYAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

       a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a five-count information in the

form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349; Giving and Offering a Bribe to a Public Official, in violation of 18 U.S.C. § 201(b)(1)(C); and Making False Statements, in violation of 18 U.S.C. § 1001(a)(2).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i. Self-report to the State Bar of California, and any other bar to which he belongs, within one week of his guilty plea, the fact of his plea agreement and guilty plea. Defendant agrees that the conduct outlined in this plea agreement is a basis for his disbarment from any bar association, including California. Defendant also agrees not to challenge any disbarment proceedings.

j.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

l.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true:

a. During the time period alleged in Count One of the information there was an agreement between two or more persons to commit bank fraud; and

b. Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The elements of bank fraud are as follows:

a. Defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises;

b. Defendant knew that the statements or promises were false;

c. The statements or promises were material, that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

d. Defendant acted with the intent to defraud; and

e. The financial institution was federally insured.

5.   Defendant understands that for defendant to be guilty of the crime charged in Counts Two and Three, that is, Giving and Offering a Bribe to a Public Official, in violation of Title 18, United States Code, Section 201(b)(1)(C), the following must be true:

a.   The defendant gave, offered, or promised something of value, to a public official; and

b.   The defendant acted corruptly, that is, with the intent to induce the public official to do, or to omit to do, an act in violation of his lawful duty.

6.   Defendant understands that for defendant to be guilty of the crime charged in Counts Four and Five, that is, Making False

4

Statements, in violation of Title 18, United States Code, Section 1001(a)(2), the following must be true:

a.   Defendant made a false statement in a matter within the jurisdiction of the executive branch of the government of the United States, namely, DOJ-OIG, FBI or DHS;

b.   Defendant acted willfully; that is, defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and

c.   The statement was material to the activities or decisions of the DOJ-OIG, FBI or DHS; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

## PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 201(b)(1)(C), is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 1001(a)(2), is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100.

10.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 50 years' imprisonment; a five-year period of supervised release; a fine of $2,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $500.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $941,153, but

recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.   The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that

7

defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

16.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

<u>Bank Fraud</u>

Beginning in or before August 2014, and continuing through at least November 2016, there was an agreement between two or more persons to commit bank fraud.  Defendant became a member of that conspiracy knowing of its object and intending to help accomplish it.  The conspiracy worked as follows:  A J1 visitor visa is a non-immigrant visa issued to non-U.S. citizens to participate in work and study-based exchange programs in the United States.  The J1 visa is

8

issued for a specified time period, after which the visa
holder is required to depart the United States.  A co-
conspirator would take over the identities of persons who
had been issued J1 visas after the visa holder had departed
the United States.  The co-conspirator and others would
apply for and obtain credit cards in the visa holders'
names.  After receiving the credit cards, defendant and the
co-conspirator charged the credit cards at businesses in
the Central District of California controlled by defendant,
including Pillar Law Group and Regdalin Group.  No services
were provided by defendant or any of his businesses to the
individuals in whose names the credit was falsely obtained.
Defendant then transferred a portion of the money received
from the credit card companies to the co-conspirator.  In
furtherance of the conspiracy, defendant charged at least
$941,153 in fraudulent credit card charges to Pillar Law
Group and Regdalin Group.  Federally-insured financial
institutions defrauded as a result of this conspiracy
include Chase Bank, Capital One, Bank of America, Wells
Fargo Bank, American Express, US Bank, Barclays, and
Citibank.

Bribery of a Federal Official

HSI Special Agent

Between November 2015 and January 2017, defendant paid at least
$32,000 in personal checks to a Special Agent of the Department
of Homeland Security, Homeland Security Investigations ("HSI
SA") in the Central District of California, for the HSI SA's
benefit.  At least $27,920 went directly to pay the HSI SA's

credit card bills including:  approximately $17,100 to the HSI SA's Navy Federal Credit Union credit card bills; and $10,820 to the HSI SA's U.S. Bank credit card.  Additionally, defendant caused to be written a $5,000 check payable to the HSI SA's wife, deposited into the HSI SA's account at Cabrillo Credit Union.  Defendant also made cash bribe payments to the HSI SA in the Central District of California totaling at least $45,000 to $50,000.  Defendant paid the HSI SA in return for the HSI SA being influenced in the performance of an official act.  Through his compensation to the HSI SA, defendant acted corruptly, that is, intending to influence the HSI SA in the performance of an official act.

In return for cash bribe payments and other things of value, the HSI SA would, among other things, use his official position and access to restricted law enforcement information to assist defendant for reasons having nothing to do with federal law enforcement.  For instance, defendant asked the HSI SA to use law enforcement databases to determine whether there were any federal, state, or local investigations relating to real property defendant wanted to purchase.  Defendant also asked the HSI SA to query law enforcement databases for information about individuals.  For example, a German citizen known to defendant was a client of defendant's law firm who wanted to enter the United States but was unable to obtain a visa to enter, in part, because of a prior drug conviction.  On or about September 25, 2015, at the request of defendant, the HSI SA ran the name of the German citizen in TECS—a Department of Homeland Security

10

database system formerly known as the "Treasury Enforcement
Communications System"—in an attempt to ascertain why the German
citizen could not enter the United States.  The HSI SA provided
a computer printout with search results to defendant.  In
addition to querying the German citizen's name and disclosing
non-public information to defendant, the HSI SA also told
defendant that he had removed any alerts for the German citizen
in TECS, thereby making it more likely that the German citizen
would be permitted to enter the United States.  There was no
legitimate law enforcement reason for this database search or
the removal of alerts for the German citizen.  Defendant paid
the HSI SA approximately $30,000 in a cash payment to compensate
the HSI SA for his official acts relating to the German citizen.

In exchange for bribe payments, in or about February 2016, the
HSI SA also attempted to have defendant's family member
"paroled" into the United States from Armenia by falsely
claiming that defendant's family member was a confidential
source aiding the United States government and local law
enforcement in drug investigations. The HSI SA drafted a formal
parole request on HSI letterhead for this purpose and caused it
to be approved by an unwitting supervisor.  The HSI SA then sent
a photograph of the letter to defendant as proof of his efforts
to secure the family member's parole.  When the attempt to
parole defendant's family member into the United States was
unsuccessful, the family member turned himself into Customs and
Border Protection at the U.S.-Mexico border as an asylum
applicant.

FBI Special Agent

   Defendant met a Special Agent from the Federal Bureau of
Investigation ("FBI SA") assigned to a National Security squad
in San Francisco no later than September 2014.  In early 2015,
defendant and the FBI SA agreed that defendant would pay the FBI
SA in return for the FBI SA being influenced in the performance
of an official act.  More specifically, the FBI SA would provide
"protection" to defendant on an as-needed basis by, among other
things: (1) running law enforcement database checks for reasons
having nothing to do with federal law enforcement or the FBI
SA's legitimate work as an FBI agent; (2) disclosing the results
of those database checks to defendant, thereby allowing
defendant and his associates to thwart the detection of
legitimate law enforcement efforts and undermine ongoing
investigations; and (3) proactively warning defendant to "stay
away" from certain individuals targeted or otherwise involved in
ongoing investigations to help ensure that defendant did not,
himself, become the target of any such investigation.  Defendant
knew that if the FBI SA warned him to "stay away" from someone
that it meant the person was under investigation.  In exchange
for the FBI SA performing official acts and otherwise disclosing
non-public information to defendant, defendant paid the FBI SA
approximately $5,000 to $10,000 per month in cash for at least
one year, beginning in or about January 2015.  Defendant paid
the FBI SA personally and in cash to try to conceal the payments
and their illicit relationship.  To meet defendant in person,
the FBI SA flew or drove to Southern California.  During these
trips, in addition to providing the FBI SA with cash, defendant

also paid for the FBI SA's luxury hotel rooms in Beverly Hills, including at the Beverly Hills Hotel, the Montage, and the Four Seasons.  Defendant also treated the FBI SA to expensive restaurant dinners, cocktails, and cigars.  Over the course of their corrupt relationship, defendant paid the FBI SA at least $95,500 in cash.  In addition, defendant and the FBI SA traveled to Las Vegas together multiple times.  Defendant paid for the FBI SA's Las Vegas hotel rooms and arranged for the FBI SA to fly to Las Vegas on defendant's private jet.

On or about April 29, 2015, defendant purchased a 2015 Ducati 1299 Panigale S motorcycle for the FBI SA at a Beverly Hills Ducati dealership for $36,000.  Included in that price was a helmet and other accessories for approximately $4,000 for the FBI SA.  Defendant charged the Ducati purchase on his American Express Card and did not seek or obtain reimbursement from the FBI SA because the purchase of the motorcycle was a "bonus" for the FBI SA having queried a particular person in law enforcement databases for defendant.

On or about September 30, 2015, defendant obtained or caused to be obtained a $30,000 Wells Fargo Bank cashier's check, which stated that the remitter was "Andor'e."  Although Andor'e was a Beverly Hills hair salon, the cashier's check was money from defendant that was a bribe payment to the FBI SA.  The FBI SA requested the payment because he needed funds to purchase a vacation house.  The payment was routed through the Beverly Hills hair salon to the FBI SA's business, also a hair salon, to

13

disguise the true source and purpose of the payment.  Defendant
intentionally concealed his involvement as the source of the
cashier's check.  The FBI SA intended that the check appear to
be a business-to-business payment when, in fact, it was bribe
money that defendant was giving to the FBI SA personally, but
which the FBI SA also routed through a business.  Approximately
five to six months later, after the FBI SA and defendant came
under scrutiny for the improper use of an FBI parking placard,
the FBI SA told defendant that he would need to pretend that the
$30,000 check was a "loan" from defendant to the FBI SA and that
the FBI SA would make "repayments" on the "loan."  When the FBI
SA wrote a "repayment" check to defendant, defendant deposited
the check and gave cash back to the FBI SA.

<u>False Statements</u>

On or about September 12, 2017, defendant falsely represented to
a federal agent with the U.S. Department of Justice, Office of
Inspector General, in the Central District of California that
the $30,000 check to the FBI SA was a loan when in fact, as
defendant then knew, defendant provided the $30,000 check to the
FBI SA as a bribe in exchange for the FBI SA accessing law
enforcement databases.

On or about December 18, 2018, defendant falsely represented to
federal agents with the FBI and HSI in the Central District of
California that the FBI SA did not access law enforcement
databases on behalf of defendant and that defendant's purchase
of a Ducati motorcycle and accessories for the FBI SA was a
gift, when in truth and fact, as defendant then well knew,

14

defendant corruptly gave and offered the FBI SA approximately $95,500 in cash and paid an additional $40,000 to a Ducati dealership for a motorcycle and accessories on behalf of the FBI SA in exchange for the FBI SA querying law enforcement databases and sharing the results with defendant, and proactively warning defendant about individuals who were targets of FBI investigations.

## SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

//

//

Count Two

| | | | |
|---|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2C1.1(a)(2)] |
| Multiple Bribes | +2 | [U.S.S.G. § 2C1.1(b)(1)] |
| Value of Bribe: | +8 | [U.S.S.G. § 2C1.1(b)(2)] [U.S.S.G. § 2B1.1(b)(1)(E)] |
| Involving a Sensitive Position | +4 | [U.S.S.G. § 2C1.1(b)(3)] |
| Multiple Count Adjustment | +3 | [U.S.S.G. § 3D1.1] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the

17

Court, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence, with the exception of the Court's
calculation of defendant's criminal history category; (b) the term of
imprisonment imposed by the Court, except to the extent it depends on
the Court's calculation of defendant's criminal history category;
(c) the fine imposed by the Court, provided it is within the
statutory maximum; (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$1,000,000; (f) the term of probation or supervised release imposed
by the Court, provided it is within the statutory maximum; and
(g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in General
Order 18-10 of this Court; the drug testing conditions mandated by 18
U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 26 and the criminal
history category calculated by the Court, the USAO gives up its right
to appeal any portion of the sentence, with the exception that the
USAO reserves the right to appeal the amount of restitution ordered,
if that amount is less than $941,153.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

25.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement

## EFFECTIVE DATE OF AGREEMENT

26.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

27.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

1

2

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

3      28.  Defendant understands that the Court and the United States

4  Probation and Pretrial Services Office are not parties to this

5  agreement and need not accept any of the USAO's sentencing

6  recommendations or the parties' agreements to facts or sentencing

7  factors.

8      29.  Defendant understands that both defendant and the USAO are

9  free to: (a) supplement the facts by supplying relevant information

10 to the United States Probation and Pretrial Services Office and the

11 Court, (b) correct any and all factual misstatements relating to the

12 Court's Sentencing Guidelines calculations and determination of

13 sentence, and (c) argue on appeal and collateral review that the

14 Court's Sentencing Guidelines calculations and the sentence it

15 chooses to impose are not error, although each party agrees to

16 maintain its view that the calculations in paragraph 18 are

17 consistent with the facts of this case.  While this paragraph permits

18 both the USAO and defendant to submit full and complete factual

19 information to the United States Probation and Pretrial Services

20 Office and the Court, even if that factual information may be viewed

21 as inconsistent with the facts agreed to in this agreement, this

22 paragraph does not affect defendant's and the USAO's obligations not

23 to contest the facts agreed to in this agreement.

24      30.  Defendant understands that even if the Court ignores any

25 sentencing recommendation, finds facts or reaches conclusions

26 different from those agreed to, and/or imposes any sentence up to the

27 maximum established by statute, defendant cannot, for that reason,

28 withdraw defendant's guilty pleas, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.  Defendant understands that, except as set forth in documents executed on today's date and filed with the Court, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

32.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____     4/21/2020
JEFF MITCHELL                          Date
Assistant United States Attorney

_____     4/21/20
EDGAR SARGSYAN                         Date
Defendant

_____     4/21/20
ROBERT DUGDALE                         Date
MARC NURIK
Attorneys for Defendant
Edgar Sargsyan


<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          4/21/20
EDGAR SARGSYAN                            Date
Defendant


                CERTIFICATION OF DEFENDANT'S ATTORNEY

     I am Edgar Sargsyan's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this

                                   23

agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

4/21/20

ROBERT DUGDALE
MARC NURIK
Attorneys for Defendant
Edgar Sargsyan

Date

24

EXHIBIT

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10    UNITED STATES OF AMERICA,              CR No.

11               Plaintiff,                  I N F O R M A T I O N

12               v.                          [18 U.S.C. § 1349: Conspiracy to
                                             Commit Bank Fraud; 18 U.S.C.
13    EDGAR SARGSYAN,                        § 201(b)(1)(C): Giving and
                                             Offering of a Bribe to a Public
14               Defendant.                  Official; 18 U.S.C. § 1001(a)(2):
                                             Making False Statements]
15

16

17         The United States Attorney charges:

18                          INTRODUCTORY ALLEGATIONS

19         At times relevant to this Information:

20         1.   Chase Bank, Capital One, Bank of America, Wells Fargo Bank,

21    American Express, US Bank, Barclays, and Citibank were financial

22    institutions insured by the Federal Deposit Insurance Corporation.

23         2.   Chase Bank, Capital One, Bank of America, Wells Fargo Bank,

24    American Express, US Bank, Barclays, and Citibank administered credit

25    cards to their customers and would pay merchants for transactions

26    conducted by their customers.

27

28

3.    Defendant EDGAR SARGSYAN was the Chief Financial Officer of the Pillar Law Group.  The Pillar Law Group was located in Beverly Hills, California.

4.    Defendant SARGSYAN was the Chief Executive Officer, Chief Financial Officer, and President of Regdalin Group Inc.  The Regdalin Group was located in Beverly Hills, California.

5.    A J1 visitor visa was a non-immigrant visa issued to non-United States citizens to participate in work and study-based exchange programs in the United States.  The J1 visa was issued for a specified time period, after which the visa holder would be required to depart the United States.

6.    These Introductory Allegations are incorporated into each count of this Information.

COUNT ONE

[18 U.S.C. § 1349]

A.   <u>OBJECT OF THE CONSPIRACY</u>

7.   Beginning in or about August 2014, and continuing through at least November 2016, in Los Angeles County, within the Central District of California, defendant SARGSYAN, together with others known and unknown, conspired with each other, knowingly and with intent to defraud Chase Bank, Capital One, Bank of America, Wells Fargo Bank, American Express, US Bank, Barclays, and Citibank, in violation of Title 18, United States Code, Section 1344(1).

B.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

8.   The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.   Defendant SARGSYAN's co-conspirators would take over the identities of persons who had been issued J1 visas after the visa holder had departed the United States.

b.   Defendant SARGSYAN's co-conspirators would apply for and obtain credit cards in the visa holders' names.  After receiving the credit cards, defendant SARGSYAN and the co-conspirators charged the fraudulently obtained credit cards at businesses in the Central District of California controlled by defendant SARGSYAN, including the Pillar Law Group and Regdalin Group.

c.   Federally-insured financial institutions defrauded as a result of this conspiracy include Chase Bank, Capital One, Bank of America, Wells Fargo Bank, American Express, US Bank, Barclays, and Citibank, among others.

3

C.   OVERT ACTS

9.   In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendant SARGSYAN, together with others known and unknown to the United States Attorney, committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On July 13, 2015, defendant SARGSYAN caused $23,596 to be fraudulently charged at the Pillar Law Group to a credit card ending in 4809 from Chase Bank in the name of B.Z.

Overt Act No. 2: On July 30, 2015, defendant SARGSYAN caused $23,400 to be fraudulently charged at the Pillar Law Group to a credit card ending in 1540 from Chase Bank in the name of M.Z

Overt Act No. 3: On August 18, 2015, defendant SARGSYAN caused $19,650 to be fraudulently charged at the Regdalin Group to a credit card ending in 0713 from Capital One Bank in the name of O.L.

Overt Act No. 4: On September 2, 2015, defendant SARGSYAN caused $9,800 to be fraudulently charged at the Regdalin Group to a credit card ending in 3503 from Chase Bank in the name of I.T.

Overt Act No. 5: On September 2, 2015, defendant SARGSYAN caused $23,500 to be fraudulently charged at the Pillar Law Group to a credit card ending in 3503 from Chase Bank in the name of I.T.

Overt Act No. 6: On October 3, 2015, defendant SARGSYAN caused $19,650 to be fraudulently charged at the Pillar Law Group to a credit card ending in 5095 from Capital One Bank in the name of S.D.

Overt Act No. 7: On October 31, 2015, defendant SARGSYAN caused $20,400 to be fraudulently charged at the Regdalin Group to a credit card ending in 4791 from Chase Bank in the name of K.K.

4

Overt Act No. 8:  On November 7, 2015, defendant SARGSYAN caused $18,530 to be fraudulently charged at the Pillar Law Group to a credit card ending in 8643 from Chase Bank in the name of V.M.

Overt Act No. 9:  On November 9, 2015, defendant SARGSYAN caused $22,450 to be fraudulently charged at the Regdalin Group to a credit card ending in 8756 from Chase Bank in the name of A.V.

Overt Act No. 10:  On December 2, 2015, defendant SARGSYAN caused $21,600 to be fraudulently charged at the Pillar Law Group to a credit card ending in 8742 from Chase Bank in the name of B.T.

COUNT TWO

[18 U.S.C. § 201(b)(1)(C)]

Between in or around January 2015 and in or around March 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant SARGSYAN, directly and indirectly, corruptly gave, offered, and promised a thing of value, namely, United States currency and a Ducati motorcycle, to a public official, namely, a Federal Bureau of Investigation Special Agent ("FBI SA"), with the intent to induce such public official to do an act and omit to do an act in violation of his official duty.  Specifically, defendant SARGSYAN corruptly gave and offered the FBI SA approximately $95,500 in cash and paid $36,000 to a Ducati dealership for a motorcycle and accessories on behalf of the FBI SA in exchange for the FBI SA querying law enforcement databases, sharing the results with defendant SARGSYAN, and proactively warning defendant SARGSYAN about individuals who were targets of FBI investigations, in order to help individuals evade prosecution.  Such conduct violated the FBI SA's duties and responsibilities as a federal law enforcement officer, including the duty to faithfully investigate potential criminal activity.

COUNT THREE

[18 U.S.C. § 201(b)(1)(C)]

Between in or around September 2015 and in or around January 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant SARGSYAN, directly and indirectly, corruptly gave, offered, and promised a thing of value, namely, United States currency, to a public official, namely, a Department of Homeland Security, Homeland Security Investigation, Special Agent ("HSI SA"), with the intent to induce such public official to do an act and omit to do an act in violation of his official duty. Specifically, defendant SARGSYAN corruptly gave and offered the HSI SA at least $77,000, in exchange for the HSI SA querying law enforcement databases and sharing the results with defendant SARGSYAN, and attempting to use the HSI SA's position to have defendant SARGSYAN's family member admitted into the United States by falsely claiming that defendant SARGSYAN's family member was a confidential source aiding the United States government. Such conduct violated the HSI SA's duties and responsibilities as a federal law enforcement officer, including the duty to only use his HSI position and resources for legitimate law enforcement activity.

COUNT FOUR

[18 U.S.C. § 1001(a)(2)]

On or about September 12, 2017, in Los Angeles County, within the Central District of California, defendant SARGSYAN knowingly and willfully made a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the United States Department of Justice, Office of Inspector General, by falsely stating that a $30,000 check to a Special Agent with the Federal Bureau of Investigation ("FBI SA") was a loan, when in fact, as defendant SARGSYAN then knew, defendant SARGSYAN provided the $30,000 check to the FBI SA as a bribe to the FBI SA in exchange for the FBI SA accessing law enforcement databases in order to help individuals evade prosecution.

COUNT FIVE

[18 U.S.C. § 1001(a)(2)]

On or about December 18, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant SARGSYAN knowingly and willfully made a materially false, fictitious, and fraudulent statement in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security, by falsely stating that an FBI Special Agent ("FBI SA") did not access law enforcement databases on behalf of defendant SARGSYAN and that defendant SARGSYAN's purchase of a Ducati motorcycle and accessories for the FBI SA was a gift, when in fact, as defendant SARGSYAN then knew, defendant SARGSYAN corruptly gave and offered the FBI SA approximately $95,500 in cash and paid in additional $36,000 to a Ducati dealership for a motorcycle and accessories on behalf of the FBI SA in exchange for

//

//

//

1  the FBI SA querying law enforcement databases and sharing the results

2  with defendant SARGSYAN, and proactively warning defendant SARGSYAN

3  about individuals who were targets of FBI investigations.

4

5                                       NICOLA T. HANNA
                                        United States Attorney

6

7

8                                       BRANDON D. FOX
                                        Assistant United States Attorney

9                                       Chief, Criminal Division

10                                      MACK E. JENKINS
                                        Assistant United States Attorney

11                                      Chief, Public Corruption & Civil
                                        Rights Section

12

13                                      JEFF MITCHELL
                                        Assistant United States Attorney

14                                      Major Frauds Section

15                                      RUTH C. PINKEL
                                        Assistant United States Attorney

16                                      Public Corruption & Civil Rights
                                        Section

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, **T. Montes**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT EDGAR SARGSYAN**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ **By email, as follows:**
rdugdale@kbkfirm.com
Robert Dugdale
10100 Santa Monica
Blvd., Suite 1725,
Los Angeles, CA
90067

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **April 27, 2020**, at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

/s/

**T. Montes**
Legal Assistant